# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 5:24-CR-341 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE BRIDGET MEEHAN BRENNAN |
| vs. | : | |
| | : | |
| MICHAEL MONROE JAMES, | : | **MOTION TO SUPPRESS** |
| | : | |
| Defendant. | : | |

Michael James, through counsel, respectfully moves this Honorable Court for an Order suppressing the statements he made to law enforcement on July 1, 2024, in violation of his Fifth Amendment rights. Because the subsequent search of his cellular phone was obtained as a direct result of the unmirandized statements, the cell phone contents should be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/Edward G. Bryan*
EDWARD G. BRYAN
Assistant Federal Public Defender
Ohio Bar: 0055556
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216) 522-4856 Fax: (216)522-4321
E-mail: edward_bryan@fd.org

# MEMORANDUM

I. **STATEMENT OF FACTS**

On July 1, 2024, Special Agent Austin Johnston and Task Force Officer Katherine Jarvis went to Michael James' home to interview him. The agents audio recorded the conversation. (Exh. A: Audio recording). When the recording switches on, Officer Jarvis is discussing Michael's mental health medications with him. Michael is heard speaking about something that occurred between himself and some coworkers that he does not remember because of the medication he was taking. (Id. at :12). Michael states that he did not "remember going home sometimes" so he ceased using all medication. (Id. At :22).

As the phone begins to ring and announces a call from Michael's father, agents inquire whether Michael lives with his parents, (David and Heather James). He responds affirmatively and informs police his father is trying to call him now. (Id. at 1:33). It is clear at this point that Michael's parents have been alerted to the police presence in their home as they can be heard trying to call him throughout the interview. Michael's mother then calls. Agent Johnston inquires about the call, and Michael says he will text her. As he does so, Agent Johnston states, "not to be intrusive or anything, but while you do that is it okay if Katie [Officer Jarvis] makes sure you're not doing anything on your phone you shouldn't be?" (Id. at 2:27). Michael hesitates then responds, "yeah, well," (Id. at 2:36).

As Michael hands over his phone, the law enforcement officers apparently ascertain that he is overwhelmed by their presence. They attempt to reassure him. As one tells him to "take a deep breath," another observes, "I know you're a little nervous." (Id. at 2:42). To further assuage Michael's fears, Officer Johnston states, "if we weren't here just to have a conversation with you, we would have come in a different manner, if you know what I mean." (Id. at 3:05).

Michael's parents began calling again. Agent Johnston acknowledges that his parents must be "concerned about" him. (Id. at 3:56). Against the backdrop of another parental call, law enforcement question Michael. When his mother calls yet again, Agent Johnston tells Michael to "answer your mom." (Id. at 4:32). Michael attempts to answer his mother's worried questions, but Agent Johnston takes the phone from Michael stating, "I'll talk to her." (Id. at 4:45). Agent Johnston states he has come to the house to question Michael about some "episodes, historically" Michael has had in the past. (Id. at 5:24). His mother asks for clarification, inquiring "you mean like, suicidal?" to which Agent Johnston responds, "correct." (Id. at 5:22). When Ms. James asks how the agents came to know of any information, Agent Johnston responds it came through one of their "tip lines." (Id. at 6:06).

With the call completed, Agent Johnston asks Michael if he can peruse his Whisper app and phone to confirm that Michael is being honest with them. (Id. at 12:34). He confronts Michael with a consent form to sign that authorizes law enforcement to search his phone. (Id. at 12:55). Michael says he has "no idea" about the conversations he has had on Whisper or his username to log into the account. (Id. at 14:45). Michael informs them he does not remember having the Whisper conversations because he was "not in my right mind." (Id. at 15:39). Agent Johnston again asks whether he will find anything downloaded on Michael's phone. Michael responds once again that he does not know because "some things that I have downloaded when I'm not in my right same mind." (Id. at 17:30).

When Agent Johnston offers to show Michael some of the conversations he has had to refresh his memory, Michael states they will not assist him because most of the conversations he had was when he was "not in the right state of mind, depressed, angry." (Id. at 18:43). Agent Johnston assures Michael: "If you're going to be honest about it, you're not going to jail." (Id. at

20:54). Agent Johnston presses him further, telling Michael it is his "one" opportunity to be honest. (Id. at 21:34). Michael responds to questions but is audibly crying. He states, "I want to kill myself right now." (Id. at 24:30).

Ms. James walks into her home. (Id. at 25:38). Michael tells his mom about his cell phone activity, where he has texted that he wants to hurt himself or others. Law enforcement officers stop the interview. As Michael sobs and describes texts he has written on his phone, Ms. James asks Michael, "Do you feel like you need help?" Michael responds, "To be honest, probably." (Id. at 27:25). The interview concludes, and Agent Johnston informs Michael they are confiscating his phone. (Id. at 29:18). At no point during the interview did officers advise Michael of his Fifth Amendment rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

## II. ARGUMENT

**A. Michael was in custody when law enforcement interrogated him, requiring them to provide him with all *Miranda* warnings. Because he was interrogated without knowing his rights, his statements were obtained in violation of his constitutional rights and must be suppressed.**

The threshold question is whether Michael was in the custody of law enforcement when he was interrogated by Agent Johnston and Officer Jarvis. Clearly, he was. Under the Fifth Amendment to the United States Constitution an individual may not be "compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

To ensure this constitutional protection, the government may not use statements, whether exculpatory or inculpatory, obtained during a custodial interrogation, unless they properly utilize procedural safeguards to guarantee the accused has been informed of, and freely waives, their constitutional privileges to remain silent. *Miranda v. Arizona*, 384 U.S. at 444-45. A custodial interrogation occurs when a person has been taken into custody or is otherwise deprived of his

freedom of action in any significant way, and a law enforcement officer questions that person. *Illinois v. Perkins*, 496 U.S. 292, 296 (1990); *see also United States v. Square*, 790 F.Supp. 2d 626, 651 (N.D. Ohio 2011) (Lioi, C.J.).

In determining whether a person is in custody during an interrogation, the Supreme Court sets forth two essential questions: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Several factors guide this inquiry, including: (1) the location of the interview; (2) the length and manner of questioning; (3) whether the individual possessed unrestrained freedom of movement during the interview, and (4) whether the individual was told he need not answer the questions. *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009). No one factor is "dispositive of the custody issue." *See Stansbury v. California*, 511 U.S. 318, 325 (1994).

Although an interview in a defendant's residence may not be considered custodial, courts have held there are exceptions to this generalization. "The number of officers, the show of authority, the conspicuous display of drawn weapons, the nature of the questioning all may transform one's castle into an interrogation cell—turning an inherently comfortable and familiar environment into one that a reasonable person would perceive as unduly hostile, coercive and freedom-restraining." *United States v. Panak*, 552 F.3d at 466 (citing *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir.2008)).

Based on this law, it is clear Michael was in custody during the interview, which required the agents to read Michael his *Miranda* rights. Although Michael's parents continuously tried to reach him, he clearly felt unable to answer the phone without the agents' permission. In fact, he only answered the phone upon the permission of Agent Johnston, who tells Michael to "answer

your mom." (Id. at 4:32). It is obvious from this interchange that Michael does not feel free to move around his house as he pleases and believes he must wait for permission to answer the phone in his own home. He clearly did not believe he had "unrestrained freedom of movement" during the interview. *Panak*, 552 F.3d at 465.

Ignoring the frantic phone calls of his parents also demonstrates that the agents would not countenance interruption, as agents can be heard continuing questioning while the phone rings persistently in the background. A reasonable person in Michael's circumstances would not have felt he was able to terminate the interview and leave his home. *Thomson*, 516 U.S. at 112. The Court should therefore find that Michael was in custody, necessitating officers to inform him of his *Miranda* rights. Because they did not, the Court should suppress the statements Michael made during the interview.

      **B.    Law enforcement's continued questioning of Michael despite their knowledge of his mental instability was coercive, requiring suppression.**

Police exploitation of a mental condition is a significant factor in understanding voluntariness of a defendant's statements. *Colorado v. Connelly*, 479 U.S. 157, 165, (1986). In *Reck v. Pate*, 367 U.S. 433 (1961), the Court viewed the totality of the circumstances under which an intellectually disabled nineteen-year-old defendant was interrogated to be in violation of due process where the defendant was ill, interrogated for a long period of time, held incommunicado, and not given access to food or family.

In *Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009) (en banc), the Sixth Circuit observed that "the relevant constitutional principles are aimed not at protecting people from themselves but at curbing abusive practices by public officers . . . [T]he knowledge of police is vital. If they have no reason . . . to think that the suspect doesn't understand them, there is nothing that smacks of abusive behavior." *Id.* at 262 (quoting *Rice v. Cooper*, 148 F.3d 747 750-51 (7th Cir. 1998))

(further citations omitted). Therefore, a review of Agent Johnston and Officer Jarvis' interview of Michael must be viewed from their perspective.

Here, the interview was coercive. The officers knew about Michael's mental health history, as they were discussing the medications he had been taking to treat it as the interview began. (Exh. A, at :22). Through Michael's statements, they also became aware that he had ceased taking his medication because it interfered with his memory. (Id. at :22). When Ms. James asks Agent Johnston if his referral to "historical episodes" signifies Michael's previous suicide attempts, he responds, "correct." (Id. at 5:22). The agents clearly were aware of Michael's mental health history. They further acknowledged his fragility during the interview, commenting on his nervousness, and he can be heard sobbing while trying to explain he was "not in his right mind" in response to their questions about his past behavior." (Id. at 15:39). Despite knowing Michael's mental instability, they questioned him. This conduct was coercive. Thus, the confession and consent to search should be suppressed.

### C. The Court should suppress the contents of Michael's cell phone as "fruit of the poisonous tree."

Courts are required to suppress evidence that is directly or indirectly "the tainted 'fruit' of unlawful governmental conduct." *Nix v. Williams*, 467 U.S. 431, 441 (1984). What matters is not the particular illegal act that the police have engaged in, but that the challenged evidence is the result of unlawful police conduct. *Id.* at 442-43. Because the law enforcement officers here failed to inform Michael of his *Miranda* rights during their custodial interview, the Court should suppress the contents of is cell phone as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963).

**III.    CONCLUSION**

Agent Johnston and Officer Jarvis never informed Michael of his *Miranda* rights during a custodial interrogation in his home. They knew of his mental health issues, yet coercively questioned him regardless. The interview therefore was in violation of Michael's Fifth Amendment rights. Any statements he made should be suppressed and the contents of his cell phone should be suppressed as derivative of the tainted interview.

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

*/s/Edward G. Bryan*
EDWARD G. BRYAN
Assistant Federal Public Defender
Ohio Bar: 0055556
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216) 522-4856 Fax: (216)522-4321
E-mail: edward_bryan@fd.org