IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:24-CR-341 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL MONROE JAMES, | ) | <u>RESPONSE TO DEFENDANT'S</u> |
| | ) | <u>MOTION TO SUPPRESS</u> |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Rebecca C. Lutzko, United States Attorney, and Toni Beth Schnellinger Feisthamel, Assistant United States Attorney, and hereby submits this response to Defendant's Motion to Suppress. (R. 18: Motion to Suppress, PageID 100-107). For the reasons set forth below, the United States opposes Defendant's Motion and respectfully requests that this Court deny the Motion.

**BACKGROUND**

On or about June 30, 2024, Defendant using the named "Ambient Sun" engaged in conversation with a FBI Online Covert Employee, who the Defendant believed to be an eleven-year-old female on an application named "Whisper." Within the conversation, the Defendant told the "eleven-year-old girl," "I would drive there just to hook up with you." The Defendant also believed the "eleven-year-old girl" was pregnant. The Defendant made statements about raping the child the "eleven-year-old girl" was pregnant with as well as kidnapping the "girl." The Defendant also sent a photo of an erect penis, referenced numerous times about having sex with the minor, and sent a photo of himself to the "eleven-year-old girl."

Prior to this conversation, law enforcement investigated the background of "Ambient Sun." Law enforcement traced the user back to Clinton, Ohio, and the Defendant.

On July 1, 2024, Agents with the FBI went to the Defendant's residence in Clinton, Ohio to speak with Michael James regarding his online chats. An audio recorded interview was conducted inside the residence of Michael James, where he discussed his activity on "Whisper." On July 1, 2024, James signed an FBI Consent to Search form for his Apple iPhone 15 Pro Max S/N: KHM95C7DYQ. On or about July 31, 2024, law enforcement began analyzing the Apple iPhone 15 Pro Max phone image using Griffeye Analyzer. A total of 764 files containing suspected Child Sex Abuse Material were located. A description of some of the files is as follows:

a.   File Name: 9vMAwJDa_thumb.jpg

Description: This file is a color image that depicts an adult male engaged in genital-to-genital sexual contact with a nude infant female.

b.   File Name:Jv9H3ZxL

Description: This file is a color image that depicts an adult male engaged in genital-to-genital sexual contact with a nude prepubescent female. It should be noted the prepubescent female appears to be screaming with her mouth wide open and her eyes winced.

c.   File Name: oqsFClqb

Description: This file is a color image that depicts an adult male engaged in genital-to-genital sexual intercourse with a nude prepubescent male who is blindfolded.

Agents also found pictures of the Defendant's co-workers from a fast-food restaurant on his cellular phone. The Defendant altered the pictures by removing the clothing of the co-worker making the person appear to be nude. After agents discovered this additional information, agents signed a complaint and requested a warrant for the Defendant's arrest. During the Defendant's arrest and after the Defendant waived his rights under Miranda, Defendant made several statements regarding his activities. One such statement the Defendant stated was that if law enforcement would not have come to his house on July 1, 2024, he would have eventually met with one of the children he was talking to through the internet to engage in sexual conduct with the child. Defendant admitted to having sexually explicit conversation with a couple children online. Defendant claimed he started this behavior and continued it due to anger and depression. Defendant stated his lowest age of sexual preference was eight years of age. Defendant further admitted to sending pictures to the children as well as receiving pictures of the children. Defendant also admitted to purchasing mega links of child sexual abuse materials. Defendant informed agents that his family, including his parents with who he resides, has no knowledge of the activity of the Defendant. Defendant also made suicidal ideations to the agents.

On August 29, 2024, the Defendant was charged in a two-count complaint that alleged Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct in violation of 18 U.S.C. Sections 2252(a)(2) and (b)(1) and Possession of Child Pornography in violation of 18 U.S.C. Sections 2252A(a)(5)(B) and (b)(2). (Case 5:24-MJ-1209. Doc. 1: Complaint, PageID 1). On September 3, 2024, the Defendant appeared for an initial hearing and the United States moved for detention. On September 6, 2024, a detention hearing was held in front of Magistrate Judge Amanda Knapp. On September 20, 2024, Magistrate Judge Knapp issued an order of detention. (Case 5:24-MJ-1209. Doc. 10: Order of Detention,

PageID 27-29.)  On September 19, 2024, the Defendant was indicted for the same crimes.  (Doc 9: Indictment, PageID 22-23).  On December 9, 2024, Defendant filed a motion to suppress the Defendant's voluntary statement made on July 1, 2024 and the contents of his cellular phone which he gave consent to the officer's to search. (Doc 18: Motion to Suppress, Page ID 100-107).

**LAW and ARGUMENT**

The Fifth Amendment guarantees that 'no person . . . shall be compelled in a criminal case to be a witness against himself.'"  *New York v. Quarles*, 467 U.S. 649, 654 (1984).  The privilege against self-incrimination bars the admission of coerced or involuntary statements.  *See United States v. Fowler*, 535 F.3d 408, 416 (6th Cir. 2008).   Voluntary statements "remain a proper element in law enforcement." *Miranda v. Arizona,* 384 U.S.436, 478, 86 S.Ct. 1602, 1630. "Indeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable.... Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *United States v. Washington,* 431 U.S. 181, 187, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977).  In sum,

> "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."

Miranda 384 U.S., at 444, 86 S.Ct., at 1612.  These procedural safeguards now known as "Miranda rights" must be given to suspects who are interrogated in custody by law enforcement. *Id*. at 479.

Defendant is claiming in his motion that he was "in custody" when he was questioned in his home by law enforcement.  "A suspect is 'in custody' for purposes of receiving *Miranda* protection if there has been a 'formal arrest or restraint on freedom of movement.'" *United States v. Johnson*, No. 1:23-CR-258, 2023 WL 6879755, at *8 (N.D. Ohio Oct. 18, 2023) citing *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977)).  The determination of custody depends on the "objective circumstances of the interrogation, not the subjective views harbored by either the interrogating officers of the person being questioned." *Stansbury v. California,* 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).  The question is whether "a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).  Courts consider several factors in determining "in custody" to include (1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions. *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010) citing *United States v. Panak,* 552 F.3d 462, 465 (6th Cir.2009).  When law enforcement question a suspect in their own home, a familiar surrounding, the encounter will not rise to the legal of "in custody. *Panak,* 552 F.3d at 465.  The Court in *Panak* reasoned that one of the important factors underlying *Miranda* was the interrogator's goal of "isolating the suspect in unfamiliar surroundings 'for no purpose other than to subjugate the individual to the will of his examiner.' " *Id* citing *Beckwith v. United States,* 425

U.S. 341, 346 & n. 7, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).  Thus, an interrogation in the home will generally be non-custodial.  *Id.*

However, an in-home questioning of a suspect still could be considered custodial.  For example, the number of officers, the show of authority, weapons being conspicuously drawn, the nature of the questioning all could combine to make the questioning custodial.  *Id*.

On July 1, 2024, two agents, Special Agent Austin Johnston and Task Force Officer Katie Jarvis, went to the residence of the Defendant to speak to him.  The agents knocked on the door and Defendant's father answered the door through the ring camera system.  The agents informed Defendant's father that they were there to speak to the Defendant.  Defendant's father said he would call the Defendant to answer the door.  Defendant answered the door and spoke to the agents outside the residence.  Defendant was informed that he was not under arrest and did not have to talk to the agents.[1]

Once Defendant realized the nature of the agents visit, Defendant asked the agents inside as the Defendant wanted to avoid his parents hearing the content of the conversation through the ring camera system.  Defendant's parents called multiple times during the conversation between the Defendant and agents.  Defendant was encouraged to answer his mother's phone call or text his mother.  (Defendant Exhibit A at 2:12). After several calls, Defendant answered his mother.  Special Agent Johnston spoke to Defendant's mother to explain why the agents were at the residence, after assuring the Defendant Special Agent Johnston would not provide details to Defendant's mother.  (Defendant Exhibit A at 4:43).  During the call, Special Agent Johnston reassured the mother that at the end of the conversation between the Defendant and the agents, Defendant would not be arrested or removed from the residence.  Defendant was informed he

---

[1] The recording did not start until after the agents entered the residence.  Therefore, this was not recorded however it was reference again during the recording at 20:15.

was not going to jail at the beginning of the conversation and again later in the conversation. (Defendant Exhibit A at 20:15).

Defendant was never in handcuffs or prevented from moving about the residence nor was he prevented from answering his parents' calls. The agents spoke calmly and never raised their voices to the Defendant. The agents never displayed their firearms, and they were covered by clothing the entire time during the conversation. The conversation lasted approximately 30 minutes. In reviewing all the circumstances, a "reasonable man" in the Defendant's position would not believe he was in custody.

Defendant also claimed his statement should be suppressed as the officers exploited his mental condition. Defendant informed the agents that he doesn't remember any sexually explicit conversations with minors or downloading any internet applications. He further stated he was not in his right state of mind when he was downloading applications and engaging in conversations. Defendant adamantly denied ever downloading child pornography. (Defendant Exhibit A at 18:06). Later, he admitted to downloading mega which include child pornography. Defendant admitted to having episodes of anger, depression and anxiety but not at the time of the conversation. Defendant informed officers that he was on mental health medication for anxiety but ceased taking it.

Mental health is one component to whether a confession is voluntary. Loza v. Mitchell, 766 F.3d 466, 478 (6th Cir. 2014). citing *Withrow v. Williams,* 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). Other factors are the length of the interrogation, the location, continuity, defendant's maturity, education and physical condition. *Id*. "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *United States v. Fein*, 843 F. App'x 765, 770 (6th Cir. 2021) citing *Colorado v. Connelly*, 479 U.S. 157,

167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *accord United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989) (finding evidence of an impaired "cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary."). Just like in *Fein*, the Defendant presented no evidence of coercive activity for example "holding gun to defendant's head, interrogating for 36 hours without sleep, or interrogating for several days with little food." *Id*. Nor was he threatened or coerced in any way. *Johnson v. Warren*, No. 20-1071, 2020 WL 8254336, at *3 (6th Cir. Sept. 1, 2020).

Defendant is a twenty-eight-year-old man, who graduated from high school and completed some college. (Pretrial Services Report). He was employed as a full-time manager at a fast-food restaurant in Massillon, Ohio. His only mental health diagnosis is depression, anxiety and attention deficit/hyperactivity disorder. (Pretrial Services Report). Defendant claims that agents questioned him even though he was not stable without evidence. Defendant only claims he was unstable when he was downloading internet applications, child pornography and having sexually explicit conversations with children. Defendant makes no claims that the agents were coercive nor provide any basis for the claim that the agents exploited the Defendant's mental conditions. Finally, the Defendant provides no proof, which is required as this is Defendant's burden, that Defendant's mental condition prevented the Defendant voluntarily providing a statement. See United States v. Shields, 480 F. App'x 381, 388 (6th Cir. 2012) and *Garner v. Mitchell,* 557 F.3d 257, 264, 270–71 (6th Cir. 2009).

Last, Defendant claims that the contents of his cell phone should be suppressed under the "fruit of the poisonous tree" doctrine. As Defendant was not in custody during the conversation

with agents, there was no illegal act to trigger a suppression of Defendant's cell phone contents of which he provide written consent to search.

In conclusion, the United States requests this Court to deny Defendant's motion to suppress based on the foregoing.

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney


By: /s/ Toni Beth Schnellinger Feisthamel
Toni Beth Schnellinger Feisthamel
  (OH: 0072638)
Assistant United States Attorney
Federal Building
2 South Main Street, Suite 208
Akron, OH 44308
(330) 761-0531
(330) 375-5492 (facsimile)
Toni.Schnellinger.Feisthamel@usdoj.gov