UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:24-cr-341 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL MONROE JAMES, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Defendant Michael Monroe James ("Defendant" or "James") moves this Court, pursuant to 18 U.S.C. § 3145(b), for an order revoking the Magistrate Judge's August 26, 2024 Detention Order. (Doc. 19.) The government timely opposed the motion. (Doc. 23.) For the reasons stated below, the motion is DENIED.

**I.  Background**

    **A.  Complaint Affidavit and Indictment**

On June 30, 2024, an FBI Online Covert Employee ("OCE") reported on a conversation with user Ambient_Sun ("User") on the Whisper application. (Doc. 1-1 at 3.)[1] The OCE told the User they were a pregnant 11-year-old girl. (*Id.*) In response, the User told the individual of his intention to have sexual intercourse with her. (*Id.*) The User also sent photographs, one of an erect penis and another of a 25-year-old male with glasses. (*Id.*) Subscriber information was obtained to assist with identifying the User. (*Id.* at 4.) That subscriber information led to James'

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

parents and, in turn, a Facebook.com search revealed pictures of Defendant appearing to match the picture of the 25-year-old male with glasses. (*Id.*)

On July 1, 2024, federal law enforcement agents went to James' home. (*Id.*) James was there and consented to a recorded interview. (*Id.*) James also consented to the search of his iPhone. (*Id.*) A later extraction of its contents revealed 764 files of CSAM, some of which showed an adult male sexually abusing an infant or prepubescent children (female and male). (*Id.* at 5.) Certain images showed minors in pain or blindfolded. (*Id.*)

On September 19, 2024, a federal grand jury returned an indictment charging James with one count of receipt and distribution of visual depictions of real minors engaged in sexually explicit conduct, a violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1), and one count of possessing child pornography, a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (Doc. 9.)

  **B.** **Pretrial Services Department Report**

The Report prepared by the Pretrial Services Department ("Report") recommended bond with eighteen conditions for release, including no contact with victims/witnesses, prohibition on internet access, no contact with minors, and active GPS monitoring. (*Id.* at 16–18.) The Report acknowledged its PTRA assessment "does not accurately assess this defendant population," a population of individuals accused of child exploitation offenses. (*Id.* at 16.)

  **C.** **Detention and Hearing Order**

On September 6, 2024, a detention hearing was held before Magistrate Judge Amanda M. Knapp. (Doc. 17.) The government proffered the affidavit in support of the criminal complaint, a report of investigation, and the Report. (*Id.* at 55.) The government highlighted the Report's disclaimer about the accuracy of its risk assessment in sex offense cases. (*Id.*)

The government then called FBI Special Agent Austin Johnson. (*Id.* at 55–56.) He

summarized the OCE's communications with James (now known to have been the User). (*Id.* at 56–58.) These communications describe violent sexual intercourse with the pregnant 11-year-old and James' intent to engage in sexual intercourse with her unborn child when it reaches six years of age. (*Id.* at 58.) James also tried to arrange to meet up with the 11-year-old. (*Id.* at 59.)

Special Agent Johnson described the Bureau's subsequent investigative steps, which included a consensual search of James' cellular phone and a second, custodial interview. (*Id.* at 59–60.) When interviewed, James acknowledged engaging in online conversations for approximately two years with individuals he believed to be minors. (*Id.* at 62.) He also indicated that, but for his arrest, the online conversations would have moved to in-person meetings. (*Id.* at 64.) James indicated he primarily sought out minors as young as eight years of age. (*Id.* at 63.) He also explained collecting CSAM but stated he did not distribute such material. (*Id.* at 64.) Relatedly, James discussed creating nude images of coworkers, specifically minors with whom he worked at a fast-food restaurant. (*Id.* at 62–63.) James would secretly take pictures of these minors. (*Id.* at 62.) He then used artificial intelligence software to superimpose their faces on nude images. (*Id.*) The final image would appear as if the actual minor was without clothing. (*Id.*)

On cross-examination, Special Agent Johnson recalled James' willingness to self-surrender if a warrant was issued for his arrest. (*Id.* at 79.) Special Agent Johnson also explained that portions of James' chat logs were deleted from the online applications after James' cellular phone was voluntarily surrendered to law enforcement. (*Id.* at 80.)

James' counsel then proffered the Report and, with James' mother present for the hearing, explained that James could return home to his parents if released. (*Id.* at 86.) James and his parents would agree to any conditions or combination of conditions that the Court deemed

appropriate. (*Id.*)

In argument, the government noted that James expressed interest in meeting children as young as eight years old; recovered files and images depicted infants; some files and images are classified as sadistic CSAM; and his acknowledged interest in communicating with children was progressing to the point James acknowledged being stopped in his efforts because law enforcement discovered his activity. (*Id.* at 87.)

As to weight of the evidence relating to pretrial release, the government argued James' offense conduct occurred primarily from the home he shared with his parents but also at his place of employment. (*Id.* at 89.) Addressing whether location monitoring would be sufficient, the government highlighted that it would not necessarily prevent further use of online applications, nor would it prevent continued use of minors James could encounter in the community, much like the AI-generated images of his underage coworkers. (*Id.* at 89–90.)

In response, defense counsel acknowledged the presumption in favor of detention, but argued the Report and James' ability to return home sufficiently rebutted the presumption. (*Id.* at 90.) As to the statutory factors, defense counsel stressed that all alleged conduct occurred via online conversations or involved acquired and stored files. (*Id.* at 91–92.) To James, if the government perceived him to be a danger to the community, it could have arranged a meet (to see if he was truly intent on engaging in the behavior described in his online chats) or arrested him during the first interview. (*Id.* at 92–95.) In summary, defense counsel argued the Report's stated conditions, if adopted by the Court, would be reasonable to assure the safety of others and allow James to continue with counseling. (*Id.* at 95–96.)

On September 20, 2024, Magistrate Judge Knapp issued the Detention Order. (Doc. 10.) The Detention Order noted the rebuttable presumption of detention because the offenses alleged

involve minor victims.  (*Id.* at 29.)  The Detention Order also found the presumption sufficiently rebutted by record evidence.  (*Id.* at 28.)  Magistrate Judge Knapp concluded detention was required because the government established by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person or the community.  (*Id.* at 29.)

After noting the strength of the evidence and the lengthy term of incarceration James faces if convicted, Magistrate Judge Knapp addressed each statutory factor in turn.  (*Id.*)  The nature and circumstances of the offense weighed in favor of detention because of the volume and nature of the images as well as James' stated intention to act on his interest in children.  (*Id.*)  The weight of the evidence relative to detention "strongly" weighed against pretrial release because James' communications with the eleven-year-old girl were "sexually explicit and threatening," and his alleged conduct victimized minors with whom he worked.  (*Id.*)  In considering James' history and characteristics, Magistrate Judge Knapp noted that the offenses occurred in his parents' home.  (*Id.*)  She also noted James' mental health history and the limitations of risk assessment tools in these types of matters.  (*Id.*)  The final factor, the nature and serious of any danger presented, also weighed in favor of detention, namely because the offenses are inherently dangerous and involve minors.  (*Id.*)

### D. Parties' Positions on Appeal

James reargues the government's failure to demonstrate by clear and convincing evidence that conditions or combination of conditions cannot "reasonably [] assure" the safety of others.  (Doc. 19 at 109.)  To him, Magistrate Judge Knapp did not correctly assess the § 3142(g) factors, nor did she sufficiently address specific conditions (home detention or monitored online access) or the timing of James' arrest.  (*Id.* at 111.)

In opposition, the government reasserts the presumption in favor of detention was not properly rebutted but, if even it was, James' targeting of minors (whether from home or at work), his admitted communications with minors, and going "hands on" was only thwarted by his arrest, among other things, demonstrate by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of others, particularly minors. (Doc. 23 at 123–27.)

## II.     Analysis

Title 18, United States Code, Section 3145(a)(1) provides, in pertinent part, as follows:

> If a person is ordered released by a magistrate judge, . . . the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the conditions of release.  The motion shall be determined promptly.

District courts review a magistrate judge's release or detention order *de novo*, meaning that the district court makes an independent determination as to whether any condition or combination of conditions can reasonably assure the defendant's appearance or the safety of the community.  *United States v. Johnson*, No. 22-cr-390, 2022 WL 2800242, 2022 U.S. Dist. LEXIS 127146, at *4–5 (N.D. Ohio July 18, 2022); *United States v. Trent*, No. 21-cr-516, 2022 WL 44663, 2022 U.S. Dist. LEXIS 2339, at *4 (N.D. Ohio Jan. 5, 2022).

Under the Bail Reform Act ("Act"), "a defendant may be detained pending trial *only if* a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)).  The Act sets out "the framework for the district court's analysis as to whether release pending trial is proper." *United States v. Williams*, No. 19-cr-187, 2020 WL 2529356, 2020 U.S. Dist. LEXIS 86814, at *8 (E.D. Tenn. May 18, 2020).  The framework involves weighing four specific

factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involved a minor victim or controlled substance, firearm, explosive, or destructive device;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including –
>
>> (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The government bears the burden of proving dangerousness by clear and convincing evidence. *Stone*, 608 F.3d at 946.

As part of its *de novo* review, the Court has reviewed the following:

1. Complaint and Affidavit (Docs. 1, 1-1);

2. Indictment (Doc. 9);

3. The Report (Doc. 6);

4. Detention Hearing Transcript (Doc. 17);

5. Defendant's Motion to Revoke Detention Order (Doc. 19); and

6. Government's response in opposition (Doc. 23).

Here, detention is presumed. *See* 18 U.S.C. § 3142(e)(3)(E). The charges involve using online applications to identify minors for chats and possible meets. The charges also involve receiving

and possessing visual depictions of minors engaged in sexually explicit conduct.  This presumption can be and has been rebutted.  The Report, while based in part on an inapplicable risk assessment tool, identifies possible conditions that could reasonably assure the safety of others.  James' parents have offered to abide by any conditions imposed so that James may return home and continue mental health treatment.  The Court now evaluates the Section 3142(g) factors.

      A.      **Nature and Circumstances of the Offense Charged**

James was identified by law enforcement after engaging in chats about violent sexual encounters with a pregnant 11-year-old.  Communications involved sexually explicit conduct with the unborn child when it reached the age of six years old.  An image of James' genitalia was sent to the 11-year-old.  James admitted this conduct.  He also acknowledged other instances of communicating with minors over an approximately two-year period.  He further admitted to obtaining and storing CSAM.  The subsequent search of James' devices revealed 764 files of CSAM, some of which involved infants or was sadistic in nature.  James told the agents that but for their intervention he would have acted upon his stated intentions with minors.  This factor weighs in favor of detention.

      B.      **Weight of the Evidence Favoring Release**

James was living with his parents at the time of these alleged offenses.  The offense conduct occurred from his home or via his electronic devices.  He used online resources and applications to communicate with minors, attempted to meet a minor, sent a picture of his genitalia to a minor, and received and stored 764 files of CSAM.  Alleged targeting of minors occurred outside of the home as well.  Using interactions at his place of employment, James captured images of coworkers he knew to be minors.  He put these images through AI-generated

software and intentionally created unclothed images of these minors.  Record evidence suggests these minors were unaware that James was taking their pictures.  This factor weighs in favor of detention.

### C. History and Characteristics of the Person

James has been a lifelong resident of Ohio.  He is 28 years old.  He can maintain employment.  Indeed, James was set to begin a new job with Sunoco at the time of his arrest.  James lives with his parents.  He has experienced mental health challenges and is receiving treatment for the same.  (Doc. 17 at 95.)  James has no prior record.  He volunteered to self-surrender if a warrant was issued for his arrest.  The alleged victimization of minors occurred online or through electronic devices and had not yet progressed to physical contact or assault.  But in assessing a person's history and characteristics in the context of pretrial release, their admissions and stated intentions can be considered.  But for law enforcement confronting him, James intended to sexually assault a minor.  This is what James told law enforcement officers.  On balance, this factor weighs in favor of detention.

### D. Nature and Seriousness of the Danger that the Release Poses

Considering the record as a whole, this factor weighs in favor of detention.[2]  While mindful of the continued presumption of innocence as to the charged offense, the Court must still evaluate the proffered evidence and arguments in assessing whether the combination of

---

[2] James asks the Court to consider the two-months between his initial interview and the return of an indictment.  To him, the decision not to immediately arrest him is evidence law enforcement officers did not perceive James as a threat to others.  Special Agent Johnson testified the initial review of the cellular phone was cursory.  (Doc. 17 at 74–75.)  He took the device to FBI's CART team for extraction.  (*Id.* at 76.)  After extraction, its full contents and the nature of the CSAM files became known to law enforcement.  (*Id.*)  The Court also credits Special Agent Johnson's explanation that an arrest premised on a cursory review of the cellular phone would not have been "good practice" in this instance.  (*Id.* at 77.)

conditions proposed, including home detention, limited computer access, and parental supervision, will reasonably assure the safety of others, namely children.

These offenses occurred mostly at home but extended to public places. In addition to using online resources to seek out and communicate with minors for the purposes of engaging in sexually explicit conduct, James used his cellular telephone in everyday interactions to obtain images of minors. And while the Court appreciates his parents' willingness to comply with any conditions imposed, the facts presented show that James obtained images while in their home. He engaged in communications with minors while in their home. He also secretly obtained images while at work that he later manipulated, with such AI-generated images likely created in their home. Home detention would reveal James' location, but not what he is doing. Parental supervision, while well-intentioned, would not be sufficient to mitigate risks known to have occurred in the home or while out in the community. And monitoring may reveal what he is doing online, but the Court's reason for rejecting this condition as sufficient, whether alone or in combination, is twofold. First, James's threat to children, including children as young as eight years of age, progressed to the point where he admitted to law enforcement officers that he was no longer satisfied with online communications. (Doc. 17 at 88.) Second, his level of online sophistication turned mundane interactions into opportunities to exploit secretly obtained images of minors. (*Id.* at 88–89.)

To revoke the Detention Order, the Court must find that a condition or combination of conditions would reasonably assure the safety of others and the community. The Court cannot make such a finding here. Having conducted a *de novo* review of the record, and after considering the statutory requirements and James' arguments for pretrial release, the Court concludes the government met its burden. All statutory factors weigh in favor of detention.

**III.** **Conclusion**

For the reasons stated above, James' Motion to Revoke Detention Order is DENIED. James will remain in the custody of the U.S. Marshal during the pendency of this case.

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: January 6, 2024