1      UNITED STATES DISTRICT COURT
       NORTHERN DISTRICT OF OHIO
2      EASTERN DIVISION AT CLEVELAND

3

4 UNITED STATES OF AMERICA, *  CASE NO. 5:24-cr-341
           *
5     Plaintiff,  *
           *
6   vs.      *  JULY 21, 2025
           *
7 MICHAEL MONROE JAMES,  *
           *
8     Defendant.  *
           *

9

10

11     TRANSCRIPT OF **SENTENCING PROCEEDINGS**
   HELD BEFORE THE HONORABLE BRIDGET MEEHAN BRENNAN
12      UNITED STATES DISTRICT JUDGE

13

14
 APPEARANCES:
15

16 For the Plaintiff:  Toni B. Schnellinger Feisthamel, AUSA

17
 For the Defendant:  Edward G. Bryan, Esq.
18

19 Probation Officer:  Jennifer Deserto

20

21
 Official Court Reporter:   Lance A. Boardman, RDR, CRR
22            United States District Court
            801 West Superior Avenue
23            Court Reporters 7-189
            Cleveland, Ohio 44113
24

 Proceedings recorded by mechanical stenography; transcript
25 produced by computer-aided transcription.

1          (In open court at 10:17 a.m.)

2          THE COURT:  We are now on the record in the

3    matter of United States of America v. Michael Monroe James,

4    Case Number 5:24-cr-341.

5          Will counsel for the Government please state your

6    appearance for the record.

7          AUSA SCHNELLINGER FEISTHAMEL:  Good morning,

8    Your Honor.

9          Toni Beth Schnellinger for the United States.

10          THE COURT:  Good morning.

11          On behalf of the defendant.

12          ATTORNEY BRYAN:  Hello, Your Honor.

13          Edward Bryan on behalf of Michael James.

14          THE COURT:  Good morning.

15          Good morning, Mr. James.

16          THE DEFENDANT:  Good morning, Your Honor.

17          THE COURT:  And on behalf of Probation.

18          PROBATION OFFICER DESERTO:  Good morning, Your

19    Honor.

20          Jennifer Deserto on behalf of U.S. Probation.

21          THE COURT:  Good morning.

22          By way of background, Mr. James was charged with one

23    count of receiving and distributing visual depictions of

24    minors engaged in sexually explicit conduct, a violation of

25    Title 18 United States Code Section 2252(a)(2), and also in

1    Count 2, child pornography, a violation of Title 18 United
2    States Code Section 2252A(a)(5)(B).
3         Mr. James pleaded guilty to both counts pursuant to a
4    written plea agreement.
5         What I have received and reviewed in preparation for
6    today's sentencing hearing, the presentence report and the
7    victim impact statements and materials, also the defendant's
8    sentencing memorandum with exhibits.
9         Thank you, Mr. Bryan, for that.
10        As it relates to the presentence report, Mr. Bryan,
11   have you and your client had enough time together to read,
12   review, and discuss the presentence report?
13             ATTORNEY BRYAN:  We have, Your Honor.
14             THE COURT:  Mr. James, do you feel you've had
15   enough time with your counsel to read, review, and discuss
16   the presentence report?
17             THE DEFENDANT:  Yes, Your Honor.
18             THE COURT:  And the Government as well?
19             AUSA SCHNELLINGER FEISTHAMEL:  Yes, Your
20   Honor.  Thank you.
21             THE COURT:  In looking at the final
22   presentence report, no party stated any objections to the
23   probation officer.
24        Is that correct on behalf of the Government?
25             AUSA SCHNELLINGER FEISTHAMEL:  That is

1   correct, Your Honor.

2               THE COURT:  Mr. Bryan?

3               ATTORNEY BRYAN:  Correct, Your Honor.

4               THE COURT:  All right.  With respect to the

5   guideline calculation — this is set forth in paragraphs 16

6   to 32 of the presentence report — I adopt the calculation

7   here.  I also note that it mirrors the calculation of the

8   parties' plea agreement.

9       The base offense level is 22.  There is a two-level

10  specific offense characteristic for prepubescent minors,

11  toddlers, and infants.

12      There's another two levels added because of the type

13  of distribution.

14      There is four levels added because the material

15  portrays sadistic or masochistic conduct.

16      There is a two-level increase for use of a computer.

17      There's a five-level increase because the offense

18  involved 600 or more images.

19      The adjusted offense level is 37.

20      Based on Mr. James's statement here in paragraph 16, I

21  do find under 3E1.1 that a two-level reduction for

22  acceptance of responsibility is appropriate.

23      What is the Government's position with respect to the

24  third level?

25              AUSA SCHNELLINGER FEISTHAMEL:  Your Honor, we

1   would move for the third level as well.

2            THE COURT:  That motion is granted.

3       So the total offense level is 34.

4       With respect to Mr. James's criminal history — this is

5   in paragraphs 34 to 37 — simply stated, he has none.  And so

6   the criminal history category is I.

7       The advisory guideline range is 151 to 188 months.

8       Any objection to state to the Court's guideline

9   calculation or determination of criminal history?

10      On behalf of the Government?

11           AUSA SCHNELLINGER FEISTHAMEL:  No, Your Honor.

12           THE COURT:  Mr. Bryan?

13           ATTORNEY BRYAN:  No, Judge.

14           THE COURT:  Thank you.

15      The Court adopts the final presentence report in full

16  and will now hear from counsel as to what an appropriate

17  sentence should be.

18      And then, Mr. James, you'll have an opportunity to

19  address the Court directly if you wish to do so.  All right?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Ms. Schnellinger?

22           AUSA SCHNELLINGER FEISTHAMEL:  Thank you, Your

23  Honor.

24      Just a few things that I would like to point out

25  initially.

1    I recognize that the restitution amount is 7,500 as

2  requested by the one victim that has been identified.  I

3  note for the record that in the sentencing memorandum

4  Mr. Bryan objects to that amount.  It was not objected to in

5  the -- to the PSR.

6    If the Court deems it appropriate, because this was

7  just -- the United States just learned of this last week

8  and, to be fair, I wasn't actually in the office last week,

9  we would ask for a restitution hearing if the Court intends

10  to do a lower amount.

11    I believe it was particularly well laid out in the

12  victim/witness statement and the information received from

13  her attorney.

14    I'd also like to point out one other thing based on

15  the sentencing memorandum.

16    There is an attachment from a PhD, a doctor.  I would

17  like to point out that there is some differences in the

18  nature and circumstances of the actual offense and what the

19  particular doctor who interviewed and met with Mr. James.

20  There was no discussion about any of the conversations that

21  Mr. James had with children online.  It doesn't seem to

22  appear that the doctor was aware that he was chatting with

23  an undercover officer who was posing as an 11-year-old

24  child.

25    So I would ask the Court to take that report with a

grain of salt based on the doctor not having all the
information.

As well as some information about why he was fired
from McDonald's.  There seems to be a big difference between
the report -- the PSR and the doctor's report.

And I point that out because one of the problems with
reports from doctors who have not really worked with an
individual for a very long time and are just doing an
assessment is they're relying on self-reporting.  And
clearly, this doctor didn't have all the information.  So
I'd ask the Court to take that into account.

The United States is asking for an 180-month sentence.
And I recognize that it's higher than the average and median
sentence, and we're asking for that for several reasons.

One, it is within the guidelines.  It does incorporate
all the sentencing characteristics within the guidelines.

It doesn't incorporate some things.  It doesn't
incorporate the fact that this investigation began the
defendant chatting with an 11-year-old child who was an
undercover officer, but the defendant didn't know that.

It doesn't incorporate the fact that the investigation
revealed that by defendant's own admissions, he was talking
to other children.

It doesn't incorporate truly some of the activities he
wished to engage in.

1    It doesn't incorporate the fact that -- although it

2    does incorporate the fact that he was involved with sadism,

3    it doesn't really go so far about what he was really

4    interested in.  And I'd ask the Court to take that into

5    account when considering a sentence.

6        I think the --

7            THE COURT:  Meaning what, Ms. Schnellinger?

8    If you could expound on that to help me understand.

9            AUSA SCHNELLINGER FEISTHAMEL:  I think

10   although -- the guidelines incorporate the sadism and the

11   infants.

12           THE COURT:  Correct.

13           AUSA SCHNELLINGER FEISTHAMEL:  But -- that's

14   why I think a higher sentence in the guidelines is

15   appropriate rather than on the lower end or, as Mr. Bryan

16   requests, a variance down, because the type of images and

17   videos he was interested in was particularly sadistic.

18       But he went one more step further.  He reached out to

19   children or who he believed to be children and explained

20   what he wanted to do to them.  One was an 11-year-old girl.

21   He particularly targeted vulnerable children because that

22   particular child was represented to be an 11-year-old

23   pregnant female.

24       And to me, he knew what he was looking for, and then

25   he manipulated that situation.  And he told officers himself

1  if they wouldn't have got to him, he was going to act out.

2  And I think that the Court should consider that.

3     I think the Court should consider the one identified

4  victim, her statement, because one thing that she stated

5  which I think is really insightful, she stated that even

6  when she is dead, the memories of her abuse live on.  And

7  she's right because she'll be gone, but that memory will be

8  out there and the images are out there, and it's always

9  going to be known that that's what happened to her.  And he

10  found sexual gratification from that.

11     And I think that she was very astute in stating that

12  individuals who look at these images take part in her murder

13  as it destroys her.  Although not as quickly as a

14  stereotypical murder, but it does destroy her.  And I think

15  that was very insightful.

16     Again, this is not just someone that was looking at

17  child pornography or seeking child pornography.  This is

18  someone that was seeking children.

19     And when you look at the defendant himself, he was

20  able to keep a job, he was able to seek out assistance when

21  needed.  He went to get medical health treatment -- or

22  mental health treatment after the FBI visited him.

23     He didn't do that before when he was so depressed he

24  was downloading child pornography.  He didn't want to.  He

25  only did it when he got caught.

1  So we believe that based on all those things, that a

2  180-month sentence will really address all the factors the

3  Court must consider but especially the danger, the very

4  serious danger he poses to the public based on the images

5  and the fact that he was seeking out children.

6  Deterrence. That is a very long sentence. It will

7  deter him from doing this again and others hopefully to do

8  it again.

9  Punishment. His behavior warrants a grave punishment.

10  And I believe a 180-month sentence will do that as well.

11  He's a young man. He will someday be released from

12  prison, and the last thing we want him to do is to continue

13  this. And an 180-month sentence will allow him to get

14  treatment, although I realize that treatment is a difficult

15  and lengthy and sometimes unsuccessful process, but at least

16  he will have an opportunity to get that treatment.

17  Again, we know it is higher than the median average

18  range. It is still within the guidelines. And based on all

19  the activity he was doing, specifically seeking out children

20  on top of downloading and distributing child pornography, we

21  believe it's appropriate.

22  Thank you.

23  THE COURT: Ms. Schnellinger, can I just ask

24  you one question?

25  AUSA SCHNELLINGER FEISTHAMEL: Yes.

1          THE COURT:  You referenced that there was sort

2     of a disparity between the nature and circumstances here and

3     how they were summarized by the examiner in the report.  And

4     you referenced why he was fired from McDonald's, but I

5     don't -- can you give more information on that?

6          AUSA SCHNELLINGER FEISTHAMEL:  In the

7     report -- in the PSR it says that he was fired from

8     McDonald's for using a racially derogatory term.  It does

9     not say that.  In the report it says that he stole $3.

10    Completely different.  And I think that goes to show he's

11    trying to present himself in a positive light.

12          THE COURT:  Okay.  Thank you.

13        Oh, one more question.

14        Was it a McDonald's or Taco Bell that he was found to

15    have been taking images of coworkers?

16          AUSA SCHNELLINGER FEISTHAMEL:  McDonald's.

17          THE COURT:  Thank you.

18        All right.  Mr. Bryan.

19          ATTORNEY BRYAN:  Yes, thank you, Your Honor.

20        At this time, the Court endeavors to impose a

21    minimally sufficient sentence, and the Court does so by

22    looking at the nature and circumstances of the offense

23    conduct and the history and characteristics of Mr. James to

24    arrive at a sentence that is sufficient — and I think this

25    is the most important part — but not greater than necessary

1    to accomplish the purposes and goals of sentencing.

2         That being that when we sentence people in Federal

3    Court, we don't do it gratuitously, we do it sufficiently.

4    We're not trying to deprive somebody of their liberty one

5    day longer than necessary to accomplish the purposes and

6    goals of sentencing.

7         And I would submit to Your Honor that the Government's

8    recommendation does just that.  It causes the Court to

9    impose a sentence that's much greater than necessary to

10   accomplish the purposes and goals.

11        So looking at the nature and circumstances of the

12   offense conduct, we would agree that this case began on a

13   very disturbing note, and that was that on June 13, 2024,

14   there was an undercover police officer on the Whisper app

15   online pretending to be an 11-year-old child that had

16   recently become pregnant and sent out this statement saying,

17   "OMG, I'm pregnant, what are my parents going to do?"

18        And Mr. James, and what we've come to find out later

19   on who Mr. James is, not on this day, not on June 13, but we

20   kind of figure out who he is over the course of this case,

21   comes off as sounding like the worst child offender

22   imaginable in the statements that he makes to the undercover

23   officer.  They're outlined in the presentence investigation

24   report.  I think every part of that chat is there.  It's

25   there for the Court to see.

1          And what I would submit to Your Honor, that other than

2    it says that on June 14, 2024, there was one last

3    communication between Mr. James and the undercover officer

4    where Mr. James indicated is that person ready to in essence

5    to become their sex slave, nothing else happened.  Nothing

6    else happened after that.  Either -- I don't know if law

7    enforcement attempted to reach out to Mr. James again, but

8    all I know is from past experience that some of these child

9    sexual exploitation cases begin in this undercover capacity.

10          And I've had more than one case, more than probably

11   two cases, maybe a half a dozen cases throughout my career

12   where the undercover officers continue to go back and forth

13   in this same capacity with the individual, and they arrange

14   a meeting and they'll say, well, you know, meet me at this

15   certain place at this certain time, and then the person

16   arrives at that meeting, sometimes they're bringing gifts

17   for the child and everything else, in an effort to see if

18   they really intend to follow through with the things that

19   they're saying in that chat log.

20          But what we have in this situation is nothing of that.

21   And I don't know if that's because law enforcement didn't

22   attempt to cajole Mr. James any further or if Mr. James

23   after June 14 just decided to not reach out anymore to the

24   undercover in that regard and now it talked how they went

25   on.

1    And what I would submit to Your Honor is that there's

2    no evidence to believe that there ever would have been a

3    hookup, so to speak, if this was a real person and not just

4    an undercover officer.

5    But in other cases we are able to confirm that the

6    individual had an intent to actually meet up and not just to

7    pretend to be something online, to be shocking, to act out

8    in a certain way in the comfort of their own home, you know,

9    behind their cell phone screen or behind their computer

10   screen, being something, being a monster that they really

11   aren't or being something that they're really not even

12   capable of being.

13   So when it comes to the sort of the psychological

14   things at play here -- and I'm -- I wish, and I regret that

15   Dr. Afsarifard didn't mention it in his report, but he was

16   given all the information which included the criminal

17   complaint in this case, which included the -- this

18   information in the criminal complaint.

19   So just moving on with the nature and circumstances of

20   the offense, Mr. James isn't here charged with an enticement

21   crime.  The mandatory minimum for an enticement crime where

22   he's attempting to lure a child into engaging in sexual

23   conduct is a mandatory minimum of 15 years which the

24   Government is seeking.

25   He didn't get charged with that crime though, and the

1   reason he didn't get charged with that crime is because he

2   didn't commit that crime notwithstanding the shocking nature

3   of the chat that he had with the undercover law enforcement

4   officer.

5        And I think it's such because there's no way to be

6   able to prove beyond that chat that whether that was a sort

7   of a fantasy role play as compared to someone who really

8   intended to engage in that type of conduct.

9        Well, just moving on with the nature and circumstances

10  of the offense conduct, Mr. James was visited by the FBI on

11  July 1, so the last contact with the undercover was on June

12  14.  The FBI basically just used that information to get

13  a -- well, actually, they didn't.  They used that

14  information to find Mr. James.  They did an IP search and

15  found Mr. James.

16       And then they -- Your Honor is well aware of the facts

17  of the interaction with the FBI because it was the subject

18  matter of an earlier hearing.

19       FBI showed up at Mr. James's home.  They didn't place

20  him under arrest.  In fact, they were very clear to tell him

21  that he wasn't under arrest, in many ways so they wouldn't

22  have to advise him of his rights under those circumstances

23  because he wasn't being detained, he wasn't under arrest.

24       And Mr. James engaged in conversation with them and

25  admitted to them his involvement in this type of behavior.

1    To the extent that we were arguing that they -- at the

2    previous proceeding that Mr. James wasn't cooperative -- or

3    that we were arguing that Mr. James didn't voluntarily

4    consent to the search of his phone, the Court found that he

5    did under those circumstances.  And what it revealed is that

6    Mr. James was being very cooperative with law enforcement

7    that day, that he was very upset about what -- what was

8    going on, he was alarmed by the FBI coming to see him.  And

9    so much so that right after that Mr. James, and with the

10   assistance of his parents, admitted himself into a treatment

11   program at Generations mental health treatment program in

12   Youngstown.  And that was an inpatient program that he was

13   in for about two weeks, which was followed up with

14   outpatient treatment at Portage Path, outpatient mental

15   health treatment at Portage Path.

16   And then it was on September 3 that Mr. James was

17   arrested on a criminal complaint in this matter.  So

18   Mr. James remained in the community from basically from July

19   1 when he had first contact with law enforcement until

20   September 3 when there was a criminal complaint.  And then

21   at that time, the Government did move for Mr. James's

22   detention, and he was detained throughout that period of

23   time.

24   So again, I think the Government's trying to punish

25   Mr. James for a crime that he was never charged with and

1  that he didn't commit.

2      This sort of sentencing somebody for something he may

3  have committed or may have done in the future I think sort

4  of smacks of sort of a "Minority Report" situation.

5      I don't know if the Court is familiar with the movie

6  "Minority Report," but it was a science fiction thriller

7  involving Tom Cruise.  And they used to have the ability --

8  or they had the ability in the movie to predict crime before

9  it happened.  And so what they -- and they were doing it so

10 because they had these psychics who were hooked up to

11 computers, and then these psychics would see a crime ready

12 to be committed.  And so they would send the police out

13 before the crime was committed, and then they would convict

14 people of the future crime that they -- so it was sort of

15 like the best of both worlds where they could get the

16 criminal off the street before the crime was committed.

17     But then they found out later on, and this is where

18 the movie gets its title, is that there was -- there were

19 minority reports, meaning there were three psychics, and

20 from time to time one of the psychics didn't agree with the

21 other two as far as what was going to happen in the future.

22     So people were literally being arrested based upon

23 something that they thought was going to happen and

24 imprisoned based upon what they thought was going to happen.

25 They found out later on that there's evidence to believe

1  that it wouldn't have happened at all.

2          THE COURT:  Well, Mr. Bryan, I appreciate all

3  of that, but there are two counts he was charged with.  He

4  did plead guilty to those two counts.  We do have an

5  advisory guideline range.

6      But I do hear your argument that the 180 would be a

7  15-year term, and I hear your concern that it addresses

8  conduct for which he was not charged.

9          ATTORNEY BRYAN:  Understood, Your Honor.  And

10  I appreciate Your Honor understanding that.  And I don't

11  want to belabor the point as it relates to the movie.

12      The only point being that Mr. James said obviously

13  some irrefutably very terrible things in that chat between

14  him and the undercover officer.  And it is -- they are facts

15  that the Court can consider in the report, but I would

16  submit that the greater evidence is that these are the

17  statements of someone who is deeply disturbed emotionally

18  and mentally.

19      Now we're sort of transitioning to the history and

20  characteristics of Mr. James.  He grew up as an only child.

21  His parents are present in court today.  They've been very

22  supportive to Mr. James throughout his entire life and

23  throughout this ordeal as well.  I think that's something

24  that should be considered on his behalf, that he does have a

25  supportive family.

1    THE COURT:  Certainly.

2    ATTORNEY BRYAN:  And is willing, and as

3 evidenced by what they did after his encounter with the FBI,

4 to try to get him the help and rehabilitation and counseling

5 and mental health and psychiatric help that he needs moving

6 forward.

7    Mr. James I think acknowledges that as well.  I think

8 he not only in the statements that he said to Dr. Afsarifard

9 but in his statement of acceptance of responsibility, he

10 admits to the crime.  He says:  I accept responsibility.  I

11 knew it was wrong.  I'll never do anything like it again.

12 When I was really in a depressed state of mind, I wanted to

13 seek torture, and I couldn't find it except for child

14 pornography.  I wasn't in my right frame of mind.  I think

15 that counseling and mental health treatment would really

16 help.

17    So Mr. James I think alluding to something that

18 Dr. Afsarifard sort of picked up on as well, that he has

19 severe depression and anxiety.

20    As the Court is also aware from the presentence

21 investigation report, Mr. James went off to college.  His

22 freshman year in college he was overwhelmed with his -- the

23 stress, not -- I guess -- I don't know if it was the stress

24 of college or the stress of being away from home for the

25 first time, but he had a mental breakdown at college and

1  attempted suicide while he was at college by overdosing on

2  his Adderall I believe it was.

3  And so it's clear that Mr. James -- he's also suffered

4  some traumas as a child, losing family members, young

5  grandparents in their 60s suddenly on three separate

6  occasions.  And so there's a lot going on with Mr. James

7  that I think contributed to his online behavior and what he

8  was doing online, the places that he was going, the images

9  he was viewing, and the things he was saying.

10  But I don't believe there's sufficient evidence to

11  believe that he was going to act out on any of that other

12  than what he did act out on, which was accessing child

13  pornography.

14  So as I had started my allocution, the Court is

15  endeavoring to impose a minimally sufficient sentence.  We

16  got to of course hold Mr. James accountable for his conduct,

17  which every child pornography defendant sentenced in the

18  last five years, some 775 of them had the same thing.  The

19  courts had to hold them accountable for their conduct.  They

20  had to take into consideration what is needed to deter the

21  individual moving forward.

22  I would submit to Your Honor that if Mr. James was

23  released today, this experience that he's been through over

24  this last several months would act as a tremendous deterrent

25  against him reoffending in this manner in the future, and

1  especially if he's on strict supervision with a lengthy term

2  of supervision, with the conditions of supervision that

3  would be very restrictive as well, as they all are in cases

4  like this.

5      Unfortunately for Mr. James, the minimum sentence in

6  this case is 60 months, so he knows he's going to prison.

7      And I think it is relevant.  The sentencing disparity

8  is something that the Court has to consider.  And so people

9  similarly situated with Mr. James, we don't know what all

10  their facts and circumstances are other than the ones that

11  led to their offense calculations.  And those who arrived at

12  offense level 34 and criminal history category I, even

13  though the guideline range is 151 to 188 months, the median

14  sentence is 97 months.  And I think the average sentence was

15  109 months if I'm correct.

16      The bottom line is is that that means people are

17  getting sentences below that range if that's the median

18  sentence.  And of course that means people are getting

19  sentences above that range too.  But I don't know that

20  Mr. James fits that profile as the person that should get

21  not only above the median guideline range for this type of

22  offense conduct but near the maximum sentencing -- near the

23  maximum.  188 is the max.  180 is very close to the max,

24  much closer to the max than the mandatory minimum.

25      And for those reasons, we do believe a variance is

1    appropriate.  I don't -- since we've already briefed the

2    issues as it relates to the sentencing guidelines, I don't

3    think I need to belabor that other than to point out the

4    fact that the Sentencing Commission has been attempting to

5    amend the guidelines since 2012 in an area that would

6    provide relief to people who are being sentenced in this

7    area, and only because it takes an act of Congress have they

8    not been -- if the Sentencing Commission had their way,

9    these guidelines would have been modified in significant

10   ways that may have already reduced at least what Mr. James

11   is looking at guideline-wise.  And that's articulated in the

12   sentencing memorandum, so that's all I'll say about that.

13       But I think most importantly, I think Mr. James, when

14   he speaks for himself, he'll tell the Court how much he

15   wants to get the help that he needs, both psychologically,

16   emotionally, and psychiatrically if necessary.  I think it's

17   great that he has such a supporting family and mother and

18   father.

19       And for those reasons, we'd ask the Court to vary

20   downward.  We requested a specific sentence in the

21   memorandum, but anything there or even in the median or

22   average range we believe would be sufficient but not greater

23   than necessary to accomplish the purposes and goals of

24   sentencing.

25       Thank you, Your Honor.

1          THE COURT:  Thank you, Mr. Bryan.

2      Mr. James, this is your opportunity to address the

3  Court if you wish to do so.  If you do intend to address the

4  Court, you must stand.

5          THE DEFENDANT:  I'd like to address the Court,

6  Your Honor.

7      I am sorry for what I did.  This definitely will make

8  it where I won't do anything like this again.

9      I'm also seeking help right now at Mahoning County

10  Jail with a therapist for everything that I've went through

11  and to help me become better with all this.  I'm seeking

12  psychiatric help with medicines that they are giving me.

13  And whenever I go to prison, I will be seeking more mental

14  help, more psychiatric help to become better and help myself

15  from all this.

16          THE COURT:  Thank you.

17      At this time, the Court must consider and has

18  considered the relevant factors set out by Congress in Title

19  18 United States Code Section 3553(a).  Mr. Bryan is correct

20  to stress that the Court's obligation is to impose a

21  sentence that is sufficient but certainly no greater than

22  necessary to comply with the purposes of sentencing.  And

23  the Court is very mindful of that obligation.

24      In addition to the advisory guidelines and the policy

25  statements, the Court must consider all of those applicable

1  sentencing factors, among them being the nature and

2  circumstances of the offense, the history and

3  characteristics of Mr. James, the need for the sentence

4  imposed, the need to avoid unwarranted sentencing

5  disparities, the kinds of sentences available as well.

6      And speaking to some of those factors, I'll start with

7  the nature and circumstances of the offense.

8      Over what was like a two-day period in June of 2024,

9  Mr. James believed he was communicating with an 11-year-old

10  girl who represented herself to be pregnant.

11     The discussions -- and I appreciate Mr. Bryan's candor

12  on this point.  The discussions are rather horrific.  They

13  certainly address violence as it relates to this 11-year-old

14  girl that he was talking about meeting up with.

15     When there was communication between Mr. James and the

16  FBI — this was on July 1 of 2024 — I do agree Mr. James was

17  cooperative with law enforcement.  Somewhat alarming to the

18  Court was that he did not appear to be candid with his

19  family and that that, based on what's in the presentence

20  report, seems to have continued.

21     But I do think it is important to note two things as

22  it relates to the nature and circumstances of this conduct

23  here and in addition to what's already been said.

24     Mr. Bryan, you've indicated there's no evidence he

25  would have continued, but Mr. James's own statement was that

1    if he had not been stopped, he would have acted out.

2         He did take this one step further.  It was not, as the

3    Government noted, simply looking at images online.  He began

4    communicating with minors.  We know of the one.  The

5    Government has represented there's more.  But there was an

6    effort to put in place an opportunity for him to engage with

7    minors.

8         And given in the last part of the text exchange with

9    the purported 11-year-old he indicated to her if she met

10   with him, she would never see her parents again, when

11   coupled with the homicidal ideations that are discussed

12   here, that is very alarming offense conduct to the Court.

13        As it relates to Mr. James's history and

14   characteristics, this is where the Court considers prior

15   record, violence, physical abuse, diminished capacity,

16   employment, age, substance abuse, and family ties.

17        Mr. Bryan was correct to note that Mr. James has a

18   very supportive family, some of whom are here.

19        There is no prior record, no history of abuse at all

20   of any kind.  Mr. James grew up in a stable home with a

21   supporting and loving family.

22        There are well-documented mental health concerns, and

23   obviously these need to be addressed, but they include

24   suicidal and homicidal thoughts.

25        There's a limited substance abuse history.

1    Mental health treatment has been sporadic.

2    I believe always available, given the statements his

3    mother provided to the probation officer, I believe your mom

4    would have done anything that you needed.  You didn't seek

5    out that help though.  And the Government has made the point

6    that you only sought it out when you realized you were in

7    criminal trouble.

8    You have -- you are educated.  You graduated high

9    school.  You got some college credits.  You've demonstrated

10   the ability to be employed.  You've even stated, and this is

11   to your credit, that you wished to get a job when you are

12   released.

13   As for the need for the sentence imposed, this is

14   where the Court considers just punishment, affording

15   adequate deterrence, protecting the public, reflecting the

16   seriousness of the offense, improving Mr. James's conduct

17   and condition.

18   I appreciate your statements, Mr. James, that you are

19   very invested now in your treatment.  I think that that is

20   also very much to your credit.

21   As it relates to what the Court must consider, these

22   conversations, as I've referenced, were, no other way to

23   describe it, rather horrific and indicated to her she would

24   not see her parents again if she met up with him.

25   The statements later to law enforcement that if they

1    had not stopped him, he would have continued escalating, the

2    fact that when he worked in the food industry and he worked

3    with minors, he was taking pictures of them without their

4    knowledge is concerning.

5         The point of this being that the Court has to consider

6    that the conduct was escalating and presenting a greater

7    threat to the community than simply as -- not simply but

8    than just viewing child pornography.

9         I do appreciate the victims' statements and what this

10   kind of conduct does to them for the rest of their lives.

11        In mitigation, it is very important to note Mr. James

12   has no prior criminal convictions.  I don't think even a

13   traffic ticket.  He's never served any period of

14   incarceration.

15        There's no real substance abuse issues.

16        He has significant mental health issues that involve

17   these homicidal ideations.

18        But if you separate the mental health concerns, there

19   has been much that you've done, Mr. James, that has been

20   productive, for you and for others.

21        As I consider though, and I've already sort of stated

22   what the aggravating factors are, I do consider your

23   counsel's argument for a downward variance requested as a

24   60-month term of incarceration.  That would require a

25   nine-level variance.

1       And I will say Mr. James's history and

2   characteristics, namely his age, still relatively young,

3   mental health history, lack of any criminal history, family

4   support and ties, are factors to consider in support of a

5   variance.  A variance of nine levels, though, would not

6   reflect the seriousness of the offense conduct.

7       Here, that offense conduct included images of infants

8   and young children being abused, the chats with the

9   purported 11-year-old girl, and that there were additional

10  chats with minors occurring at that time.

11      The variance requested would not promote respect for

12  the law, adequately account for deterrence, or sufficiently

13  reflect concerns for the community.

14      I do note -- I went through the examination report

15  that was attached to the defendant's sentencing memorandum,

16  and I noted some things that are important to the Court's

17  analysis of whether a variance is appropriate at all and

18  certainly whether a variance as requested, 60 months, or

19  even closer to 109, is appropriate.

20      In the report, the clinical psychologist noted that

21  Mr. James stated he began watching child pornography a year

22  ago in order to improve his mood.  It was, he attributed to

23  Mr. James's own statement, the easiest material to find that

24  depicted people getting hurt.  Viewing the suffering of

25  these children helped ease his own internal pain, a pain

1   that is due, the examiner concluded, due to major depressive

2   disorder that is moderate, chronic, and with acute

3   exacerbations.

4        He also indicated that Mr. James views himself as

5   having received a, quote, raw deal from life which can

6   significantly reduce his motivation or incentive for change,

7   end quote.

8        He also noted, with respect to Mr. James, that, quote,

9   because of his problems with impulse control and limited

10  emotion regulation abilities, end quote, Mr. James

11  experiences impairments with the anticipating consequences

12  of his own actions and not being able to appreciate the

13  boundaries of his own conduct.

14       Another quote:  His erroneous conclusions, ill-advised

15  actions, and faulty judgment are likely to cause significant

16  adjustment difficulties for him.

17       These comments were -- and I appreciate, Mr. Bryan,

18  you also making clear that the examiner had the full record,

19  to include the affidavit in support of the complaint.  But

20  these statements indicate that there is a threat level that

21  is more than moderate.

22       And in the calculation that was provided, certain

23  items were scored by the examiner.  Access to children

24  received a zero, but in fact in the presentence report there

25  are family members -- Mr. James has young family members, I

1    believe even around the age of the purported 11-year-old,

2    and so there is access to minors.  So that calculation is a

3    little bit skewed.  But even with that, there's a moderate

4    concern as determined by the examiner.

5         But with these factors in mind and the balance that

6    the Court has to undertake to understand the nature and

7    circumstances of the offense conduct, fully evaluate and

8    assess Mr. James's history and characteristics, and then

9    consider the need for the sentence imposed, with all of

10   these factors the Court will be imposing a sentence that is

11   greater than the median or the average.  And I appreciate

12   that even that variance was requested.

13        But with all of these things to consider, the Court

14   is -- frankly, is reluctant to not feel that it can vary

15   from the guideline range because, Mr. James, there are

16   things that are a credit to you, and I do think you suffer

17   and you struggle, but on balance the Court cannot find that

18   a sentence outside of the advisory guideline range would in

19   fact be sufficient.  But I do not agree with the

20   Government's request for 180 months because I do think that

21   would be greater than necessary.

22        So with all of this stated, the Court's sentence is as

23   follows:

24        Pursuant to the Sentencing Reform Act of 1984 and

25   Title 18 United States Code Section 3553(a), it is the

1   judgment of the Court that Mr. Michael Monroe James be

2   committed to the custody of the Bureau of Prisons for a term

3   of 151 months.  That is the lowest of the advisory guideline

4   range but one that even absent the guideline range would be

5   the appropriate sentence under 3553(a).

6        This will be on each count to be served concurrently,

7   so at the same time.

8        Upon release from imprisonment you shall be placed on

9   a term of supervised release for 15 years.  This term

10  consists of 15 years on each of Counts 1 and 2.

11       So within 72 hours of release from the custody of the

12  Bureau of Prisons you shall report in person to the Pretrial

13  Services and Probation Office either in the sentencing

14  district — that's this one — or the district in which you

15  are released.

16       Based on the overall assessment of your financial

17  condition, I waive a fine.

18       The special assessment, though, has to be imposed.

19  That's mandatory.  So there is a special assessment of $200,

20  $100 for each count of conviction.

21       As it relates to the JVTA assessment, I have reviewed

22  your sentencing memorandum with respect to this, Mr. Bryan.

23  Is there anything you wish to state in addition to what's

24  already in the sentencing memo?

25                   ATTORNEY BRYAN:  Your Honor, only that

1    Mr. James obviously is indigent and that the mandatory

2    minimum fine I think sufficiently -- is a sufficient penalty

3    for Mr. James's conduct in this matter.

4        Thank you.

5                    THE COURT:  Thank you.

6        Anything from the Government?

7                    AUSA SCHNELLINGER FEISTHAMEL:  Your Honor, I

8    would defer to the Court.  I would only say that he is a

9    young man.  He has the ability to work and he has worked in

10   the past, and I believe that future earnings should be

11   considered.

12                   THE COURT:  Thank you, Ms. Schnellinger.

13       So the Court does have to consider future earnings.

14   So the Court looks at Mr. James's present financial

15   situation, and certainly he has appointed counsel, and your

16   counsel has represented you well.

17       As it relates to, though, the second factor the Court

18   must consider, it is the ability, to me, to have an income

19   going forward.  You are only 29 years old.  You've

20   demonstrated the ability to work.  You've expressed to the

21   probation officer that you wish to return to work when you

22   are released.  There is certainly future earning potential

23   that supports the JVTA assessment of $5,000 on each count.

24       So the Court will impose the JVTA assessment of $5,000

25   for Count 1 and then for Count 2, so a total of $10,000.

1          As it relates to the Amy, Vicky, and Andy Child

2     Pornography Victim Assistance Act, the Court will impose a

3     $200 special assessment for Count 1 and a $100 special

4     assessment for Count 2.  That's a total of $300 special

5     assessment.

6          With respect to restitution, I have also reviewed the

7     arguments presented, Mr. Bryan, in your sentencing memo.  Is

8     there anything else you wish to say with respect to

9     restitution?

10                   ATTORNEY BRYAN:  No, Your Honor.

11                   THE COURT:  On behalf of the Government?

12                   AUSA SCHNELLINGER FEISTHAMEL:  No, Your Honor.

13     Thank you.

14                   THE COURT:  So I have reviewed the *Paroline*

15     case certainly, and I am aware of the factors and the

16     balance that must be considered there, and I appreciate the

17     challenge you've presented, Mr. Bryan.

18          The Court, though, does look at the particular victim

19     who's seeking $7,500 in restitution and the materials that

20     they provided here and which are attached to the presentence

21     report.

22          She was a preschooler at the time of the images.  Even

23     now she has expressed how these images, their continued

24     trafficking has presented such a challenge for her, her

25     mental health, the struggle she faces every day knowing that

1   these images are out there.  And by Mr. James's own

2   acknowledgement, he had images of this particular victim,

3   and those images were trafficked.  It is clear from this,

4   certainly, that Mr. James has acknowledged a causal harm

5   here because he had her images.

6        The courts have to consider many factors when

7   assessing the *Paroline* factors.  Certainly, Mr. Bryan,

8   you're correct to point out he was not the first instance of

9   harm, but he, as noted in *Paroline*, continued it.

10       And also as noted in *Paroline*, some people who

11  continue and cause future harms are never even identified.

12       Factoring in his role involving her exploitation of

13  images, the number of images, and her young age at the time

14  the images were created, her projected costs in treatment,

15  the $7,500 sought in restitution is reasonable certainly.

16  It's been demonstrated sufficiently.

17       So the Court will impose a $7,500 restitution order

18  for the victim identified by the pseudonym "Pia."

19       So, Mr. James, you must pay 25 percent of your gross

20  income per month through the Federal Bureau of Prisons

21  Inmate Financial Responsibility Program.

22       If there is a restitution balance remaining when you

23  are released from prison, payment must commence no later

24  than 60 days following your release to a term of supervised

25  release in monthly payments of at least a minimum of 10

percent of your gross monthly income while you're on
supervised release and continuing thereafter.

Notwithstanding establishment of a payment schedule,
nothing prevents the Government from executing or levying
upon any property you may have in order to enforce this
restitution order.

I waive interest in this case as requested by defense
counsel.

As it relates to mandatory standard and special
conditions, the Court adopts and imposes the mandatory
conditions laid out in paragraph 80, subparts 1 through 6,
the standard conditions laid out in paragraph 93, and the
special conditions, all of which are detailed in paragraphs
94 to 117. So I will list them and then where necessary
give further information, but all of this is laid out in the
presentence report.

You will be subjected to mandatory drug testing.
There is sufficient information to impose that condition at
this time.

There will be a financial disclosure obligation as
well as an obligation that you cannot incur any new credit
lines or charges without prior approval of the probation
officer.

There's a windfall condition, so if you come into any
unexpected earnings, that will be required to address your

1    financial obligations as a result of the Court's order

2    today.

3        Mental health treatment.  I appreciate greatly that

4    you recognize that this is something that you need, and so

5    certainly the Court wants to be sure that you have this

6    available to you.  So you must undergo a mental health

7    evaluation and participate in any mental health treatment

8    program and follow the rules and regulations of that

9    program.

10        If you are prescribed medications, you will be

11    required to take those medications as prescribed by your

12    treating physician.

13        There will be a search and seizure condition.  You

14    must submit your person, property, house, residence,

15    vehicle, papers, computers, as those are defined in Section

16    1030(e)(1), any other electronic device or communication

17    system, any storage device, and your office to a search to

18    be conducted by a United States probation officer.  If you

19    fail to submit to such a search, that can be grounds to

20    revoke your term of supervised release.

21        Do you understand?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  And you'll need to let anybody

24    else you live with know you're subject to this condition

25    because it could affect them as well.

1    All right?

2                THE DEFENDANT:  Yes, Your Honor.

3                THE COURT:  The probation officer will only be

4    able to conduct a search at a reasonable time and in a

5    reasonable manner provided there is reasonable suspicion

6    that a violation of supervised release has occurred and the

7    place to be searched has evidence of a violation.

8         There will be a substance abuse testing condition

9    imposed.

10        There will also be a requirement that you cooperate in

11   the collection of DNA.

12        You must participate also in a sex offense-specific

13   assessment.

14        And then with respect to what's called SORNA, the Sex

15   Offender Registration and Notification Act, you are required

16   to register under SORNA, and you must comply with the

17   requirements of that act as directed by your probation

18   officer.

19        Pursuant to the Adam Walsh Child Protection Act of

20   2006, you will keep the registration current in each

21   jurisdiction in which you reside, are employed, or are a

22   student.

23        You must no later than three business days after each

24   change in name, address, employment, or student status

25   appear in person, so walk through the door, in at least one

1    jurisdiction in which you are registered and inform that

2    jurisdiction of all changes in your reporting information.

3    If you fail to do that, that can be a violation -- a

4    separate criminal charge actually that's punishable by up to

5    10 years.

6         Do you understand?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  You are not permitted to have any

9    direct contact with children you know or reasonably should

10   know to be under the age of 18, including any children you

11   may have, without the permission of the Court.  If you do

12   have any direct contact with any child that you know or

13   reasonably should know to be under the age of 18 without the

14   permission of the Court, you must report this conduct to the

15   probation officer within 24 hours.

16        Direct contact includes written communications, in

17   person, electronic communications, chats or online

18   messaging, or any physical contact.  It does not include any

19   incidental conduct or ordinary activities in public places.

20        There's a polygraph examination.  You must submit to

21   periodic polygraph testing at the discretion of your

22   probation officer as a means to ensure that you are in

23   compliance with the requirements of supervision and

24   treatment.

25        No violation proceedings will be based solely on the

results of such an examination or a valid invocation of your
Fifth Amendment right.

The cost of the initial maintenance polygraph exam
will be covered.  Any retest polygraphs must be paid by you
at a rate of $300 based on your ability to pay.

You will be required to participate also in very
specific sex offense treatment.  You will be required to
follow the rules and regulations of that program.

There is a computer restriction as well given the
nature and circumstances of this offense.

You are prohibited from accessing any computer, online
computer service, Internet service provider, bulletin board
system, or any other public or private computer network or
the service at any location, including employment or
education, without prior approval of the Court.  Any
approval shall be subject to any conditions set by the Court
with respect to that approval.

You will consent to your probation officer conducting
periodic unannounced examinations.

And you will provide your probation officer with
accurate information about any computer systems you use or
access and all passwords that are required.

There will be computer monitoring software installed
on any device that you use.  There will be a computer search
for that monitoring software.  This is laid out in the

1   presence report.

2       There will also be a restriction on contacts with

3   minors.  You must not seek, obtain, or maintain any

4   residence, employment, volunteer work, church, or

5   recreational activities involving minors in any way without

6   the prior approval of this Court.

7       You will have a residence restriction as well.  You

8   must not reside within direct view of schoolyards, parks,

9   public swimming pools, playgrounds, youth centers, video

10  arcades, facilities, or other places primarily used by

11  persons under the age of 18.

12      You will not be permitted to date or befriend anyone

13  who has children under the age of 18 unless approved in

14  advance by the Court.

15      You will not be permitted to have any sex

16  paraphernalia as well.

17      That is the Court's sentence.

18      Let me state at this time what your appeal rights are,

19  sir.  I want you to listen carefully because it's a very

20  short period of time to file a notice of appeal to preserve

21  your appellate rights in this case.

22      So that's 14 days from the date of judgment you're

23  required to file a notice of appeal to preserve your

24  appellate rights.

25      Do you understand that short period of time?

1          THE DEFENDANT:  Yes, I do, Your Honor.

2          THE COURT:  You can ask the Clerk of Courts to

3  file a notice of appeal on your behalf.

4      But Mr. Bryan, can I trust that you would file that

5  notice of appeal if Mr. James intends to do so?

6          ATTORNEY BRYAN:  We will, Your Honor.  Thank

7  you.

8          THE COURT:  Thank you.

9      So with that said, I also want you to be aware that if

10 you can't afford to pay the costs of an appeal, you can seek

11 to have any fees waived or counsel appointed.

12     Do you understand that as well?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Are there any additional matters

15 to address before the Court asks about any objections to its

16 sentence?

17     On behalf of the Government?

18         AUSA SCHNELLINGER FEISTHAMEL:  No, Your Honor.

19 Thank you.

20         THE COURT:  Mr. Bryan?

21         ATTORNEY BRYAN:  No, Judge.

22         THE COURT:  Credit for time served.

23     Is there any facility request?

24         ATTORNEY BRYAN:  Yes, Your Honor.

25     We would request if the Court could recommend the

1  nearest appropriate facility for Mr. James to the Northern

2  District of Ohio, and specifically request Elkton, assuming

3  the Bureau of Prisons would approve of that as well.

4              THE COURT:  Thank you.  I will -- the nearest

5  appropriate facility for Mr. James I think is well said, to

6  the Northern District of Ohio, preferably Elkton.

7       With that, are there any objections to state to the

8  Court's sentence?

9       On behalf of the Government?

10             AUSA SCHNELLINGER FEISTHAMEL:  No, Your Honor.

11  Thank you.

12             THE COURT:  Mr. Bryan?

13             ATTORNEY BRYAN:  No, Judge.

14             THE COURT:  Thank you both for the work you

15  put into this preparation today.

16       And I wish you well, Mr. James.  And I thank those who

17  came today in support of you.

18             (Proceedings adjourned at 11:12 a.m.)

19                      * * * * *

20                  **C E R T I F I C A T E**

21       I certify that the foregoing is a correct transcript
    of the record of proceedings in the above-entitled matter
22  prepared from my stenotype notes.

23     _/s/ Lance A. Boardman_               _09-04-2025_
       Lance A. Boardman, RDR, CRR             DATE
24

25